UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KENNY LEE, et al.,                        )
                                          )
         Plaintiffs,                      )
                                          )
v.                                        )        Case No.: 4:22-cv-00476
                                          )
STATE FARM FIRE AND                       )
CASUALTY COMPANY, et al.,                 )
                                          )
         Defendants.                      )
                                          )

## MEMORANDUM AND ORDER

The matter is now before the Court on Defendants' Motion for Partial Summary Judgment on Plaintiffs' defamation claims in this insurance lawsuit invoking the Court's diversity jurisdiction.   Doc. No. 23.   For the reasons set forth below, this motion will be denied.

## BACKGROUND

Plaintiffs Kenny Lee and Pamala Lee filed this action against Defendants State Farm Fire and Casualty Company ("State Farm") and its employee Karen Gillespie ("Gillespie") in the Circuit Court of Osage County in February 2022, asserting claims of defamation and vexatious refusal.   In April 2022, the matter was transferred to Gasconade County and was thereafter timely removed to this Court on the basis of diversity jurisdiction.   Doc. No. 1.

This matter arises from a fire that occurred at Plaintiffs' residence on March 10, 2020.   Plaintiffs sought coverage for their real and personal property loss under their

insurance policy with State Farm.   On September 30, 2020, Gillespie in the course and

scope of her employment with State Farm, issued a letter to each Plaintiff, denying their

insurance claims.   The denial letters stated in relevant part,

> Our investigation of facts and circumstances surrounding the claimed loss
> has led to a reasonable belief and conclusion that the March 10, 20202 fire at
> 10098 Knallwood Road, Mineral Point, MO dwelling was intentionally set
> by you or at your direction.   As such, coverage for the claimed loss is
> excluded pursuant to the following provision contained in the policy:

> ### SECTION I – LOSSES NOT INSURED

> h.   **Intentional Losses**.   If any ***insured*** intentionally causes or
> procures a loss to property covered under this policy, we will
> not pay any ***insured*** for this loss.   This applies regardless of
> whether the ***insured*** is charged with or convicted of a crime.

> Our investigation of the facts and circumstances surrounding the claimed loss
> has led to a reasonable belief and conclusion that you have intentionally
> concealed and misrepresented material facts and circumstances regarding the
> claimed loss.   As such you are not entitled to coverage pursuant to the
> following condition in the policy.

> ### SECTION I AND SECTION II – CONDITIONS

> 2.   **Concealment or Fraud**.   This policy is void as to ***you*** and any
> other ***insured*** if ***you*** or any other ***insured*** under this policy has
> intentionally concealed or misrepresented any material fact or
> circumstance relating to this insurance, whether before or after
> a loss.

Doc. No. 24-6 at 1-2; Doc. No. 24-7 at 1-2 (emphasis original).

**<u>State Farm Investigation</u>**

There are conflicting reports and information as to whether the fire was accidental

or intentional.[1]   On March 10, 2020, the Potosi Fire Protection District report noted that the cause of ignition was unintentional and the factor contributing to ignition was a heat source too close to combustibles.   Doc. No. 29-7 at 1.   On March 12, 2020, the State Farm claim file states that the origin and cause investigator, Joe Garland, "found evidence of an inexpensive small extension cord that was used to run power to a space heater in the living room.   The cord overheated and caught nearby combustibles on fine."   Doc. No. 29-6 at 1.

An anonymous caller told State Farm that the fire was set intentionally, but later rescinded his statement, explaining that he was "lying and wanted to make [Plaintiffs'] lives hell."   Doc. No. 29-8 at 1.   Later, a certified fire investigator determined that the fire was set intentionally.   Lab results also indicated the presence of gasoline.[2]

State Farm concluded that the fire was intentional.   State Farm explained its rationale in the following interrogatory response:

> Mr. and Mrs. Lee both gave recorded statements and examinations under oath.   They both represented their belief that the fire started through a faulty space heater and denied having any knowledge of or involvement in the setting of the fire.   However, the fire originated at floor level along the south side of the living room. The certified fire investigator determined that the fire had to have been caused intentionally [and] was not accidental.   The lab that tested debris from the area confirmed the presence of a large amount of gasoline and not from splatter carried on shoes or from fumes emanating from the basement.

---

[1]     On this motion, the Court need not determine whether the fire was accidental or intentional.

[2]     Plaintiffs are seeking to exclude expert testimony related to the gasoline samples in a separate motion.   Doc. No. 35.

Defs.' Resp. to Pls.' Interrogs., Doc. No. 29-5 at 2.   Upon this determination, State Farm

denied coverage for the claim and sent Plaintiffs the aforementioned denial letters on

September 30, 2020.

**Plaintiffs' Attempts to Obtain New Insurance Coverage**

Plaintiffs spoke with two insurance agents from other insurance companies in

order to obtain new insurance coverage.   In January 2022, Plaintiffs spoke with Jana

Stahlhuth from Muenks Insurance Agency.   Plaintiffs contend that Ms. Stahlhuth asked

Plaintiffs about the fire, and in response Plaintiff Pamela Lee showed Ms. Stahlhuth the

State Farm denial letters.   Pamela Lee Dep., Doc. No. 29-1 at 58:14-59:9.   Ms.

Stahlhuth does not recall being showed the letters.   Stahlhuth Dep., Doc. No. 29-3 at 8:2-

17.   Ms. Stahlhuth testified that she has never asked an applicant or policyholder if they

have had a claim denied.   *Id*. at 12:16-19; 22:22- 23:3.   She further confirmed that the

only way she would learn that an applicant had had a claim denied for arson or fraud was

if the applicant volunteered that information.   *Id.* at 31:12-16.   The Plaintiffs did not

submit an application for insurance through Ms. Stahlhuth.   Ms. Lee contends that after

reading the denial letters Ms. Stahlhuth told Plaintiffs that there was "no way [they were]

going to get insurance."   Doc. No. 29-1 at 60:23-61-2.   Ms. Stahlhuth does not

specifically recall the interaction but noted that the recency of the fire alone would have

precluded coverage under most companies.   *See* Doc. No. 29-3 at 13:13-15:9.

Later, the Plaintiffs spoke with Brad Moncrief at Farm Bureau Insurance about

obtaining new insurance.   Plaintiffs contend that Mr. Moncrief asked if they had

4

insurance, and in response Plaintiffs explained that their claims had been denied after the fire and Plaintiffs had initiated a lawsuit against State Farm.   *See* Doc. No. 29-1 at 66:1-10.   Then Plaintiffs showed Mr. Moncrief the denial letters.   *Id.* at 66:10-11.   Mr. Moncrief testified that he "vaguely skimmed the letter" and understood the letter to mean that Plaintiffs' had an open claim, not that their claims were denied for arson and fraud. Moncrief Dep., Doc. No. 24-3 at 5:20-6:21; 13:9-14:9; 15:10-19.   There is conflicting testimony as to whether Mr. Moncrief requested to see the denial letters.   Mr. Moncrief testified that he does not ask prospective customers if they have had a claim denied, and it is part of their training to never ask a prospective customer if they have been denied. *Id.* at 8:22-9:5.   Plaintiffs did not submit applications with either insurance agent.

## <u>ARGUMENTS OF THE PARTIES</u>

Defendants argue that Plaintiffs' defamation claims fail as a matter of law because (1) Defendants did not publish the denial letters to a third party nor was it reasonably anticipated that Plaintiffs would be required to publish the letters to third parties in the ordinary course of events and (2) Defendants are entitled to qualified privilege to make the statements contained in the denial letters.

## <u>Publication</u>

Defendants argue that under Missouri law when a defendant communicates a defamatory matter only to the plaintiff and then plaintiff discloses it to a third party, it typically does not subject a defendant to liability.   The Defendants recognize the exception under Missouri law where "the utterer of the defamatory matter intends, or

has reason to suppose, that in the ordinary course of events the matter will come to the knowledge of some third person." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62,70 (Mo. 2000).   Defendants argue that they did not have any reason to suppose that Plaintiffs would show the letters to other insurance agents because there is a Missouri law that prohibits insurance agents from asking applicants and policyholders if they have had a claim denied.   MO. REV. STAT. § 375.1575.   Defendants argue that the showing of the denial letters by the Plaintiffs to the two insurance agents was completely voluntary and not compulsory in any way.

Plaintiffs argue that the Missouri statute prohibiting inquiry about claim denials does not apply to all insurance companies, and under the Missouri Fraudulent Insurance Act, it is unlawful for applicants to present materially false information to an insurance company or to conceal material information.   MO. REV. STAT. § 375.991.   Plaintiffs argue that under this statute a disclosure of material insurance history by Plaintiffs is compelled, thus Defendants had reason to suppose that the Plaintiffs would need to show the letters to a third party.   Plaintiffs further argue that even despite the statute prohibiting inquiry about claim denials, it is reasonable to suppose that in the course of obtaining new insurance, the conversation between an insurance agent and the prospective customer would inevitably include inquiries about why the customer was seeking new insurance and prior losses.

In reply, Defendants argue that Plaintiffs' arguments do not controvert the essential fact that neither agent to whom the Plaintiffs went to for insurance coverage

6

ever asked about prior denials or asked to see the denial letters.   Defendants also argue that the statute prohibiting inquiry about claim denial does apply to all insurers, despite Plaintiffs' claims.

## Qualified Privilege

Defendants argue that they are under a legal duty to provide a reasonable and accurate explanation of the basis of their denial (MO. REV. STAT. § 375.1007(12)) and because their denial was made in good faith, their statements are subject to a qualified privilege.

Plaintiffs argue that the cited statute does not require sending a denial letter but simply states that failing to send a denial letter is evidence of an improper claims practice.   Plaintiffs further argue that the statute does not create any absolute or qualified privilege unlike other insurance statutes.   Plaintiffs then argue that even if a qualified immunity applied, there is genuine issue of fact as to whether Defendants wrote the statement with knowledge that it was false or with a reckless disregard as to whether it was true.

Additional facts and arguments are recited below as relevant to particular issues.

## DISCUSSION

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "[T]he burden of demonstrating there are no genuine issues of

material fact rests on the moving party, and we review the evidence and the inferences

which reasonably may be drawn from the evidence in the light most favorable to the

nonmoving party."   *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation

omitted).   To avoid summary judgment, the nonmovant has the "burden of presenting

evidence sufficiently supporting the disputed material facts that a reasonable jury could

return a verdict in their favor."   *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010

(8th Cir. 1992) (citation omitted).   "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal

quotation marks and citation omitted).   "Credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge."   *Combs v. Cordish Cos.*, 862 F.3d 671, 680 (8th Cir. 2017) (citation

omitted).

**<u>Defamation</u>**

"Under Missouri law, the elements of defamation are (1) publication (2) of a

defamatory statement (3) that identifies the plaintiff, (4) that is false, (5) that is published

with the requisite degree of fault, and (6) that damages the plaintiff's reputation."

*Turntine v. Peterson*, 959 F.3d 873, 882 (8th Cir. 2020) (citing *Overcast v. Billings Mut.*

*Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000)).   "In Missouri, determining whether statements

are actionable as defamation is a two-step process."   *Turntine*, 959 F.3d at 882 (citing

*Hammer v. City of Osage Beach*, 318 F.3d 832,842 (8th Cir. 2003).   The first step is to

"determine whether a statement is capable of defamatory meaning."   *Henry v. Halliburton*, 690 S.W.2d 775, 779 (Mo. 1985).   Defamatory meaning is a meaning that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."   *Id.*   Then, if it is determined that the statements in question are capable of such meaning, the second step is to "determine whether a privilege shields the defendant from legal action." *Turntine*, 959 F.3d at 882.   There are three types of defenses a defamation defendant may assert: (1) truth, which "may always be asserted an absolute defense;" (2) absolute privilege, such as statements made during judicial proceedings; and (3) conditional or qualified privilege.   *Halliburton*, 690 S.W.2d. at 780.

Here, the parties do not dispute whether the statements have defamatory meaning, they dispute whether there was publication and whether a qualified privilege applies.

**Publication**

"Communication of defamatory matter only to the plaintiff who then discloses it to third parties ordinarily does not subject defendant to liability."   *Overcast*, 11 S.W.3d at 70.   However, Missouri recognizes an exception where "the utterer of the defamatory matter intends, or has reason to suppose, that in the ordinary course of events the matter will come to the knowledge of some third person."   *Id.*   (citing *Herberholt v. DePaul Cmty Health Ctr.*, 625 S.W.2d 617, 624-25 (Mo. 1981)).   The facts in *Overcast* are similar to the facts here.   In *Overcast*, the plaintiff suffered a fire at his home and sought coverage through his insurance company. *Overcast*, 11 S.W. 3d at 64.   After an

investigation the insurance company denied his claims and sent the plaintiff a letter
stating, "the loss resulted from an intentional act committed by you or at your direction."
*Id.* at 64-65.   The plaintiff attempted to obtain a new insurance policy through a separate
insurance company and the insurance agent asked plaintiff if he had ever had a claim
denied, and plaintiff showed the agent the denial letter, upon which the agent informed
him that she would not be able to issue him a policy.   *Id.* at 65.   The plaintiff attempted
to get insurance from other companies but was asked the same question regarding the
reason for the denial of the claim.   *Id.*   The plaintiff then sued the insurance company
for defamation.   The *Overcast* court found that the defendant "was aware that the
allegation that [plaintiff] was an arsonist would need to be published and would be
published to third parties."   *Id.* at 70.   The court found the publication exception applied
because there was testimony that the insurance agent who sent the letter was concerned
that he would be sued for defamation; his sending the letter registered mail, return receipt
requested, deliver to addressee only, was his unsuccessful attempt to avoid publication to
third parties; and there was testimony from insurance agents at other companies that
insurance applications ask if the applicant had ever had a claim denial and the reason for
the denial.   *Id.*   The court held that this was sufficient evidence of publication to support
the jury's verdict.   *Id.*

Plaintiffs argue that Defendants had reason to suppose that in the ordinary course
of events Plaintiffs, in attempting to obtain insurance, would disclose the statement to
insurance agents and representatives.   Doc. No. 1 at ¶¶ 9, 17.

10

§ 375.1575 – Insurers Prohibited from Asking About Claim Denials

Defendants argue that because MO. REV. STAT. § 375.1575, which was enacted after *Overcast*, prohibits insurers from asking prospective customers about claim denials, they had no reason to suppose that Plaintiffs would disclose the letters to other insurance agents.   MO. REV. STAT. § 375.1575 states, "[n]o insurer or its agent or representative shall require any applicant or policyholder to divulge if any insurer has denied any claim of that applicant or policy holder."

However, as Plaintiffs' contend, MO. REV. STAT. § 375.1575 does not apply to all Missouri insurance companies.   Chapter 375's title, "Provisions Applicable to All Insurance Companies," is admittedly misleading.   MO. REV. STAT. § 380.031 and MO. REV. STAT. § 380.511 explicitly exempt Missouri Mutual Insurance companies from all other insurance laws of the state.

> Any Missouri mutual insurance company operating under the provisions of sections 380.011 to 380.151 shall be exempt from all provisions of other insurance laws of this state unless such laws shall expressly declare that they are applicable to such Missouri mutual insurance companies.

MO. REV. STAT. § 380.031

> Any company operating under sections 380.201 and 380.591 [Extended Missouri Mutual Companies] shall be exempt from all provisions of other insurance laws of this state except as otherwise specifically designated in this chapter.   No law hereafter passed shall apply to any company operating under the provisions of sections 380.201 to 380.591 unless such law shall expressly declare that it is applicable to such company.

MO. REV. STAT. § 380.511.

11

Defendants argue that because MO. REV. STAT. § 380.651, Provisions Inapplicable to All Mutual Companies, which sets out certain sections of Chapter 375 that are inapplicable to mutual companies, does not specifically identify § 375.1575 as a section inapplicable to mutual companies, § 375.1575 logically must apply to mutual companies. This is not the case.   There is nothing to indicate, in the text of the statute itself, or to suggest, in the legislative history that § 380.651 overrides § 380.031 and § 380.511 such that only the identified sections of Chapter 375 therein are inapplicable to mutual companies.   §§ 380.031 and 380.511 are clear; Missouri mutual insurance companies are "exempt from **all provisions of other insurance laws** of this state **unless such laws shall expressly declare that they are applicable** to such [Missouri mutual companies.]" MO. REV. STAT. § 380.031 (emphasis added); *see* MO. REV. STAT. § 380.511; *see Farmers' & Laborers' Co-op Ins. Ass'n v. Dir. Of Revenue, State of Mo.*, 742 S.W.2d 141, 145 (Mo. 1987) (explaining that it is only insurance laws, not all laws, which must expressly state that they are applicable to Missouri mutual insurance companies in order to be so applicable.)

Section 375.1575, which was enacted after § 380.031 and § 380.511, does not expressly declare that it is applicable to Missouri Mutual Companies, nor is there any parallel statute in Chapter 380 which prohibits insurers from asking prospective customers about claim denials.   As such, not *all* Missouri insurers are prohibited from asking prospective clients about claim denials.   In fact, Plaintiffs spoke to such an agent, Janet Stahlhuth, who works for two Missouri mutual insurance companies, CFM

12

Insurance and BMI Insurance.   Although Ms. Stahlhuth testified that she does not ask

prospective clients about claim denials, she was not legally prohibited from doing so.

Missouri Fraudulent Insurance Act

Plaintiffs also argue that the Missouri Fraudulent Insurance Act, prohibits any

person from presenting materially false information to, or concealing material facts from

an insurance company or its agents in support of an application for an insurance policy.

MO. REV. STAT. § 375.991.   A person who commits a fraudulent insurance act under this

section is subject to a class E or class D felony.   *Id.*   Plaintiffs contend that even if an

insurance agent is prohibited from asking them about claims denials, Plaintiffs are subject

to felony charges if they omit material information, such as being accused of fraud or

arson.[3]   In response, Defendants argue that in light of MO. REV. STAT. § 375.1575, there

is no fraud in failing to divulge information which has not been asked.   In this instance,

it appears that § 375.991 and § 375.1575 are somewhat at odds with one another.   In

*Johnson v. Allstate Indem. Co.*, the former Director of the Missouri Insurance Department

explained how such scenarios actually play out in practice;

> [C]ommon insurance practice dictates that insurance carriers question
> homeowners about prior losses, which includes the date, type of loss,
> description of loss, and the amount of loss . . . [A]n insured must reveal prior
> losses or risk being denied coverage on a future loss due to fraudulent

---

[3]      Plaintiffs offer expert witness testimony in support of this contention, which
Defendants oppose.   Plaintiffs' expert, Thomas Millington, is a practicing trial lawyer
and does not offer specialized expertise beyond his legal experience.   *See* Doc. No. 29-4.
"As a general rule, 'questions of law are the subject of the court's instructions and not the
subject of expert testimony.'"   *United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir.
1995) (citations omitted).   The Court does not require Mr. Millington's expertise in order
to interpret the law, as such it will not be considered for the purpose of this motion.

concealment of a material fact during the application process.   While agents are precluded by law from asking about prior coverage denials, agents may ask about prior accusations of fraud and inquire with other companies about the insured's denial of a claim.

278 S.W.3d 228, 236 (Mo. Ct. App. 2009).   In *Johnson*, which was decided after § 375.1575 was enacted, the court upheld a jury verdict for defamation where an insurance agent, in a denial letter, stated that the insured intentionally concealed and/or misrepresented facts and engaged in fraudulent conduct during the investigation of the fire loss.[4]   *Id.* at 230-31.

The circumstances surrounding the publication in *Overcast* are partially distinguishable from the facts here.   Unlike in *Overcast*, in which the defendant testified that he was concerned that he would be sued for defamation and the insurance agents testified that insurance applications ask the applicant about claim denials, here there was no such testimony from Defendants and the insurance agents testified that they never ask prospective clients about prior claim denials.[5]   However, similar to *Overcast* in which

---

[4]      In *Johnson*, the plaintiff showed the denial letter to other agents in attempting to obtain insurance, as Plaintiffs did here.   However, the issue of publication was not raised in summary judgment or on appeal.   The former director's testimony quoted above was used to support the finding of actual damages, but it is also instructive with respect to common Missouri practices regarding inquiry of claim denials.

[5]      Plaintiffs contend that the ACCORD application used by many insurance companies requires the disclosure of prior losses.   While the application asks about prior losses and the amount paid on the loss, when Janet Stahlhuth was questioned as to whether a listed loss with no amount paid would lead her wonder if the claim was denied, she stated, "[n]ever ask that question, if it's been denied."   Doc. 24-2, at 22:12-23. Further, the section of the ACCORD application that asks about prior claim denials, specifically states in bold "Missouri Applicants – Do not answer this question."   Doc. No. 31-1 at 3.

the Court considered the fact that defendant sent the letter registered mail, returned receipt requested, delivery to addressee only as an unsuccessful attempt to avoid a publication, here the claim denial letters were sent via certified mail, return receipt requested, "to be opened by addressee only", and contained the disclaimer that the letter was "not intended for publication to others."   Doc. Nos. 24-5, 24-6.   Although the actions could be construed otherwise, the inclusion of such a disclaimer may suggest that Defendants were concerned of potential publication to third parties.

Further, given the fact that the statute prohibiting inquiry of claim denials does not apply to all Missouri insurance companies, the testimony in *Johnson* as to common insurance practices, and the Plaintiffs' testimony regarding the scope and course of their conversations, a reasonable juror could conclude that the Defendants had reason to suppose the letters would be published to third parties in the ordinary course of events. While the insurance agents have denied asking about prior denials, the publication exception only requires that the Defendants had reason to suppose, in ordinary course of events, the matter would come to the knowledge of some third person, it does not ask whether Plaintiffs were legally required to disclose the statements.   As such, Defendants' motion for summary judgment on this issue is denied.

**Qualified Privilege**

Next, Defendants contend that they are entitled to a qualified privilege for the statements in the denial letters because they are under a legal duty to make the

communication regarding denial to the insureds.   Missouri law defines a qualified

privilege in the defamation context as follows,

> A communication is held to be qualifiedly privileged when it is made in good
> faith upon any subject-matter in which the person making the communication
> has an interest or in reference to which he has a duty, and to a person having
> a corresponding interest or duty, although it contains matter which, without
> such privilege, would be actionable.   The applicability of the defense of
> qualified privilege is a matter of law to be decided by the trial court.

*Rice v. Hodapp*, 919 S.W.2d 240, 244 (Mo. 1996) (quoting *Carter v. Willert Home

Products, Inc.*, 714 S.W.2d 506, 513 (Mo. 1986).   "When a defendant is alleged to have

made an actionable defamatory statement, the burden is upon the defendant to prove that

it is entitled to the defense of qualified privilege."   *See Deckard v. O'Reilly Automotive,

Inc.*, 31 S.W.3d 6, 16 (Mo. Ct. App. 2000), *overruled on other grounds by, Hampton v.

Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. 2003) (citation omitted).

If the defendant establishes a qualified privilege applies, "the plaintiff can

overcome it by proving by clear and convincing evidence that either (1) the defendant

made the defamatory statement in bad-faith or with actual malice, or (2) that the

statement made exceeded the requirements of the situation."   *Fisher v. Wal-Mart Stores,

Inc.*, No. 08-0512-CV-W-GDK, 2009 WL 1941740, at *6 (W.D. Mo. July 6, 2009), *aff'd*,

619 F.3d 811 (8th Cir. 2010) (citing *Deckard*, 31 S.W.3d at 16).   "To prove malice, the

plaintiff must show that that statements were made with knowledge that they were false

or with reckless disregard for whether they were true or false at a time when defendant

had serious doubts as to whether they were true."   *Rice*, 919 S.W.2d at 244 (internal

16

quotation omitted).[6]  "Whether the defendant acted with malice is a question of fact for the jury."  *Bugg v. Vanhooser Holsen & Eftink P.C.*, 152 S.W.3d 373, 377 (Mo. Ct. App. 2004).

Plaintiffs rely on *Overcast* to support their argument that Defendants are not entitled to a privilege.   In *Overcast*, the court refused to create an absolute privilege for communications regarding claims denials.   *Overcast,* 11 S.W.3d at 71.   The court noted that there was statutory immunity for statements made by insurance companies in canceling policies, but there was no similar statutory protection for statements made in claim denials.   *Id.* (citing MO. REV. STAT. § 375.006).   Because the general assembly had chosen not to establish immunity for insurance companies for communications regarding claim denials, the court refused to create an absolute privilege for such communications.   The court also noted that the insurance company had not directed the court to any case law, statute, or provision in the policy creating a duty to send a denial letter.   The court explained, in a footnote, that it did not mean to say that reasons for denying a claim should not be given, and "if only for good customer relations, insurance companies would state a reason for denying a claim."   *Id.* at fn. 7.

---

[6]     The Missouri Approved Instructions 23.06(1) Notes on Use explains that it is a question of law for the courts to decide whether qualified privilege applies, and if the court determines that qualified privilege is applicable to use MAI 23.06(2).   *See* Mo. Approved Jury Instr. (Civil) (8th ed.) 23.06(1), Notes on Use, No. 2.   MAI 23.06(2) instructs the jury to determine whether defendant wrote the letter with "knowledge that it was false or with reckless disregard for whether it was true or false at a time when defendant had serious doubts as to whether it was true."   Mo. Approved Jury Instr. (Civil) (8th ed.) 23.06(2)

There are two key differences in *Overcast*.   First, the court was considering whether an absolute, not a qualified, privilege applied.   Second, the defendant in *Overcast* was a Missouri mutual company, thus it was not subject to the same requirements as Defendants.   The Court agrees that an absolute privilege does not apply to statements made in connection with claim denials, however the issue before the Court is whether a qualified privilege applies.

Duty/Interest

A statement is qualifiedly privileged when it is made in good faith upon any subject matter in which the person communicating has an interest or duty and the person receiving the communication has a corresponding interest or duty.   *Rice*, 919 S.W.2d at 244.   The scope of a qualified privilege is set forth by the Missouri Supreme Court in *Henry v. Halliburton*;

> "[Q]ualified privilege exists in a larger number of cases than does absolute privilege.   It relates more particularly to private interests; and comprehends communications made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, upon a subject matter in which the author of the communication has an interest, or in reference to which he has a duty, public, personal, or private, either legal, judicial, political, moral, or social, made to a person having a corresponding interest or duty."

690 S.W.2d 775, 781 (Mo. 1985) (citation omitted).

Here, Defendants point to § 375.1005-07 of the Unfair Claims Settlement Practices Act, which provides, in relevant part,

> Any of the following acts by an insurer, if committed in violation of section 375.1005, constitutes an improper claims practice:

18

\* \* \*

(12) Failing in the case of claims denial or offers of a compromise settlement to promptly provide a reasonable and accurate explanation of the basis for such actions.

MO. REV. STAT. § 375.1007(12).   The purpose of the Unfair Claims Settlement Practices Act, which encompasses §§ 375.1000 to 375.1018, is "to set forth standards for the investigation and disposition of claims arising under contracts or certificates of insurance."   MO. REV. STAT. § 375.1000(2).   The statute also explicitly states that, "[n]othing in sections 375.1000 to 375.1018 shall be construed to create or imply a private cause of action for violation of sections 375.1000 to 375.1018."   *Id.*   However, for any violations under this act, §§ 375.1010-1012 explicitly authorize the Director of Commerce and Insurance to issue administrative orders as authorized under § 374.046; suspend or revoke the license of an insurer for any willful violation; and maintain a civil action against the insurer under § 374.048.   MO. REV. STAT. §§ 375.1010-1012.   Thus, insurers covered by Chapter 375 have a legal duty, or in the very least, a legitimate interest, to provide a reasonable and accurate explanation of the basis for a claim denial, because failure to do so would subject the insurer to serious penalties and civil actions initiated by the Director of Commerce and Insurance.   *See Halliburton*, 690 S.W.2d at 780-81 (explaining that under qualified privilege, "the word 'duty' cannot be confined to legal duties, which may be enforced by indictment, action, or mandamus, but must include moral and social duties of imperfect obligation.").   Further, insureds undoubtedly have a corresponding personal and judicial interest in receiving an

19

explanation for why their claims were denied.   As such, the Court finds that a qualified privilege applies to Defendants' statements.

<u>Bad-Faith/Malice</u>

Plaintiffs may overcome the qualified privilege by establishing by clear and convincing evidence that either (1) the defendant made the defamatory statement in bad-faith or with actual malice, or (2) that the statement made exceeded the requirements of the situation.   *See Deckard*, 31 S.W.3d at 16.   Here, Plaintiffs argue that Defendants acted with malice, in that they wrote the statement with knowledge that it was false, or with reckless disregard for whether it was true or false at a time when Defendants had serious doubt as to whether it was true.   The conflicting fire causation reports create a genuine issue of fact, and the issue of whether Defendants acted with malice is an issue for the jury.   *See Bugg*, 152 S.W.3d at 377.   The Court finds, as a matter of law, that a qualified privilege applies to Defendants' statements.   However, the Court will not grant summary judgment in favor of Defendants because Plaintiffs may overcome this privilege defense at trial by establishing that Defendants' statements were made with malice.

20

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for partial summary judgment is **DENIED**.   (Doc. No. 23).

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 12th day of May 2023.

21